## Richmond

PARK BROTHERS MOVING CORPORATION, ET AL. v. S & M SYSTEMS CORPORATION.

October 10, 1975.

Record No. 750420.

Present, All the Justices.

*Marvin F. Cole (Cole, Wells, Morano, Axselle & Johnson,* on brief), for appellants.

*Donald M. Schubert (Calvin F. Major; Goddin, Major, Schubert &, Hyman, on brief), for appellee.*

*Michael L. Rigsby*, for State Corporation Commission.

HARRISON, J., delivered the opinion of the court.

Appellants, Park Brothers Moving Corporation, Woody Transfer, Inc., Cavalier Moving & Storage, Inc., Manassas Transfer & Delivery Service, Inc., Hilldrup Transfer & Storage, Inc., Merchants Storage, Victory Van Lines Corporation and Vet Vans of Va., Inc., seek to reverse a final order of the State Corporation Commission approving the proposed transfer by O. C. Wiley and Sons, Inc. to S & M Systems Corporation of Wiley's household goods carrier certificate. The appellants say the transfer is not justified by public convenience and necessity and is contrary to the law and evidence.

The Commission issued a household goods carrier certificate of public convenience and necessity to O. C. Wiley and Sons, Inc. on October 11, 1948, shortly after the Household Goods Carrier Act became effective. Wiley operated principally out of Lynchburg and on occasion served customers from Fredericksburg and Manassas. Upon the death of its principal stockholder in 1973, the stock in the company was sold to Dick Harris and Sons, Inc. Its value was determined by the amount of cash on hand, the equipment owned by the company, the ICC rights and the Virginia household goods carrier certificate. Thereafter the Harris Company concluded to sell the certificate to S & M Systems Corporation of Manassas for $9,000. Application was then made by Wiley and S & M Systems for transfer of the certificate.

▮ The dispositive question is whether the burden is on Wiley and S & M Systems to show that the proposed transfer of the certificate is justified by public convenience and necessity, as appellants contend, or whether the burden is on the appellants to show that public convenience and necessity do not justify such a transfer.

Code §56-338.11 provides that one who seeks a new certificate as a household goods carrier must prove "the proposed operation justified by public convenience and necessity". Wiley proved justification in 1948 to the satisfaction of the Commission, and the certificate then issued to Wiley has never been amended, revoked, cancelled or suspended. While S & M Systems does propose to establish an office and

facilities in Manassas and plans to serve that area, the Wiley certificate will enable S & M Systems to operate between all points in this state and over all the highways of the state. *See Fawley Motor Lines* v. *Commonwealth*, 199 Va. 624, 101 S. E. 2d 510 (1958); *McDaniel* v. *Commonwealth*, 199 Va. 287, 99 S. E. 2d 623 (1957); *Cook Transfer* v. *Commonwealth*, 196 Va. 384, 83 S. E. 2d 733 (1954). Therefore, some consideration must be given to the state at large, as well as to Manassas, in determining whether a transfer of the certificate was justified.

We are not dealing with a household goods carrier applying for a new certificate. We have here an application for transfer of a certificate under which its holder has operated for 27 years. Code § 56-338.14 requires that "Any such certificate may be transferred or leased if the Commission after a public hearing shall find the proposed transfer or lease justified by public convenience and necessity. . . ." Therefore, the test is whether the proposed transfer, not a proposed operation, is justified.

We agree with appellee that a close parallel to a transfer of a certificate of a household goods carrier (Code §56-338.14) is the transfer of a petroleum tank truck carrier certificate (Code § 56-338.34). The latter statute requires that before a petroleum certificate may be transferred the Commission must find that the transfer will serve the public convenience and necessity.

In *Transit Corporation* v. *Commonwealth*, 202 Va. 716, 119 S. E. 2d 494 (1961), one Rudolph D. Stewart applied to the Commission for approval of the transfer of his petroleum tank truck carrier certificate to Reliable Transport of Virginia, Inc. We noted that the proposed *transfer* was controlled by Code §56-338.34, not Code § 56-338.29, which provides that for a new operation the Commission is required to find the proposed *operation* justified by public convenience and necessity. We drew a distinction between the original issue statute and the transfer statute as follows:

> "Section 56-338.34 provides that this certificate may be transferred if the Commission finds that the proposed *transfer*, not the proposed *operation*, will serve the public convenience and necessity. Inherent in this certificate is the legislative declaration that it does serve the public convenience and necessity in the hands of Stewart. Regardless of the certificates held by the appellants and others, and of whether their equipment and capabilities are sufficient to serve present and potential customers, Stewart is entitled under his cer-

tificate to continue his operations until he loses his right in some way specified by the statute. . . ." 202 Va. at 720, 119 S. E. 2d at 497.

We further observed in *Transit Corporation, supra,* concerning the burden of proof, that

"[T]he certificate owned by Stewart within itself furnished evidence, supplied by the statute, that operations under it were justified by public convenience and necessity. The burden was on the objectors to show, for whatever reason they could establish by evidence, that the *transfer* of this certificate to Reliable would not serve the public convenience and necessity. . . ." 202 Va. at 721, 119 S. E. 2d at 497.

Appellants seek to distinguish *Transit Corporation* upon the ground that there is no "grandfather provision" in the Household Goods Carrier Act, as there is in the petroleum section. We question the validity of this distinction. The fact is that a person genuinely engaged in the business of transporting household goods on December 1, 1947, was entitled to make an application for a certificate of convenience and necessity as a household goods carrier within sixty days from the effective date of the Act, without further proceedings. See §5 (e) of the Act, Chapter 532, Acts of Assembly, 1948. The absence of a grandfather clause is immaterial to our decision for, irrespective of its existence, the original holders of all household goods carrier certificates issued since 1947 have had to establish convenience and necessity to the satisfaction of the State Corporation Commission prior to the time such certificates were issued.

In *Hostetter v. Pennsylvania Utility Commission,* 160 Pa. Sup. Ct. 94, 49 A. 2d 862 (1946), an applicant sought to transfer its certificate of public convenience and necessity without a showing that the issuance was necessary for the convenience of the public. The court approved the transfer applying the "presumption of continuance doctrine" by which a condition of continuous nature once established may be assumed to continue until the contrary is shown. It held that the fact of necessity was settled when the certificate was originally issued and that, since service was rendered under the certificate until the time of the proposed transfer, this circumstance established public necessity for the service, and that in the absence of proof to the contrary the Commission was warranted in concluding that the element of public necessity still existed.

The Utah Supreme Court discussed the transfer of an intrastate household goods carrier certificate in *Morris v. Public Service Commission*, 7 Utah 2d 167, 171, 321 P. 2d 644, 646 (1958), and quoted from *Collett v. Public Service Commission*, 116 Utah 413, 418, 211 P. 2d 185, 187 (1949), where the court said:

> "[T]hat the principal question in such a problem as this is that of the financial status, fitness, willingness and ability of the proposed new certificate holder to carry on the business: that so far as the public is concerned, the public convenience and necessity would not be adversely affected by the change in certificate holders."

In the instant case, convenience and necessity for its proposed operation was established by Wiley in 1948. Therefore, in support of the application for transfer, Wiley and S & M Systems need only show that the transferee is fit, has the capability and will furnish adequate and proper service under the transfer certificate. The existing certificate carries with it a legislative declaration and a prima facie presumption that it does serve the public convenience and necessity, and the burden is on a protestant to a transfer to show ruinous or unreasonable competition, or that the transfer will not serve the public convenience and necessity.

We further observe that if the proof required of public convenience and necessity is the same under Code §56-338.14 as it is under Code §56-338.8, the transfer section (§56-338.14) is wholly unnecessary. Once an applicant for a household goods carrier certificate proves convenience and necessity, the certificate he receives becomes a valuable asset. Upon the basis of such certificates, household goods carriers establish their businesses and invest large sums of money in equipment, facilities, terminals, etc. To require the holder of a certificate, or the personal representative of a deceased holder, who desires to transfer it to an assignee, to prove convenience and necessity to the same extent as is required of an original applicant, would depreciate the value of the certificate.

The Commission found that the transfer of Wiley's certificate would not increase the total number of household goods carriers in Virginia, and that S & M Systems would be able to furnish the same service that Wiley could furnish. It found as a fact that the principals behind S & M Systems have many years experience in the household carrier industry; that the company is soundly financed, is currently engaged in the interstate transportation of household goods and op-

erates intrastate within Virginia as a contract carrier; that S & M Systems has adequate storage facilities capable of storing one million pounds of household goods and has leased a facility in Manassas; and that it operates vehicles which service the Manassas area at this time. The Commission found that the transfer of the certificate to S & M Systems would enable that company to furnish a complete household goods carrier service for all its business accounts and individual customers.

The appellants, who were protestants below, are variously based throughout Northern Virginia. They introduced evidence to show that they are well operated, well financed and have efficiently served the communities in which they operate, including the Manassas area. Witnesses for appellants testified that the household goods carrier business is cyclical and that, with the exception of a very short period of time during each year, their equipment is not fully utilized. Their evidence also showed a heavy investment in capital equipment. It is obvious that these carriers do not welcome further competition, believing, as their testimony indicates, that such is not in the best interest of the industry.

The Commission concluded that without doubt S & M Systems would furnish competition to the existing carriers serving the Manassas area, but further held that there was no reason to believe that such competition would be unreasonable or ruinous.

The Household Goods Carrier Act is a liberal one, and it contains nothing to suggest that its major purpose is to prevent competition. On the contrary, the statute is "apparently ordained to permit reasonable competition". *Cook Transfer* v. *Commonwealth, supra.* The household goods carrier is not granted the same statutory protection from competition that a common carrier of passengers is and for obvious reasons.

In the instant case the State Corporation Commission has found as a fact that public convenience and necessity justify the transfer to S & M Systems Corporation of the household goods carrier certificate issued to O. C. Wiley and Sons, Inc. Its finding must be regarded as prima facie just, reasonable and correct, and it cannot be upset in the absence of a showing of an abuse of discretion. Clearly we cannot say here that there has been such abuse or that the findings of the Commission are not supported by the evidence.

Accordingly, its order approving the transfer is

*Affirmed.*