674 S.E.2d 545

**John T. GORDON, Jr.**

v.

**FORD MOTOR COMPANY.**

**Record No. 0364–08–1.**

Court of Appeals of Virginia,
Chesapeake.

March 31, 2009.

Gregory E. Camden (Charlene A. Morring; Montagna Klein Camden, L.L.P., on briefs), Virginia Beach, for appellant.

(Barry Dorans; Samuel W. Meekins, Jr.; Wolcott, Rivers, Gates, P.C., on brief), Virginia Beach, for appellee.

Present: McCLANAHAN, HALEY and PETTY, JJ.

McCLANAHAN, Judge.

John T. Gordon, Jr. appeals the decision of the Workers' Compensation Commission denying him benefits on his change-in-condition application. Gordon argues on appeal that the commission's conclusion that his claim was time-barred by Code § 65.2–708(A) should be reversed because it "erred in ruling that [Code § ] 65.2–708(C) extends only once during the life of a workers' compensation case and that the tolling provision did not apply to the facts of this case." For the following reasons, we agree with Gordon and reverse the commission's decision.

## I. BACKGROUND

The relevant facts are not in dispute. Gordon suffered a compensable injury by accident on January 9, 2000 while working at Ford's production plant in Norfolk. Thereafter, the commission entered a series of awards to Gordon for disability benefits based on this injury. The last of these awards, entered on January 13, 2003, was an open-ended award of compensation for partial disability.

Pursuant to the commission's awards, Gordon intermittently received payments of compensation for various periods of temporary total and temporary partial disability. One of the periods of temporary total disability extended from January 3, 2001 to February 19, 2001. Gordon received his last payment of compensation on February 23, 2003.

Following his injury, Gordon worked only in a light-duty position for Ford (when not temporarily totally disabled) because of restrictions arising from the injury. From October 23, 2000 through January 3, 2001 and from April 1, 2002 through June 30, 2002, Gordon worked in such a position and earned wages at or above his pre-injury wage. Gordon also worked in a light-duty capacity for Ford from April 20, 2003 through September 11, 2006, again earning wages equal to or higher than his pre-injury average weekly wage.

On September 11, 2006, Gordon was temporarily laid off from his position at Ford because the plant was shut down for production reasons. On September 25, 2006 and again on November 6, 2006 Gordon applied for disability benefits based on lost wages caused by this change in condition.

Ford defended against Gordon's application for benefits, in part, by arguing that it was not filed within two years of his last payment of compensation and thus it was barred by the statute of limitations in Code § 65.2–708(A). Relying on Code § 65.2–708(C), Gordon claimed that his application was timely because all the wages he received until April 20, 2005 [1] were deemed to be compensation. He therefore asserted that the two-year statute of limitations in Code § 65.2–708(A) did not begin to run until that date. Ford responded that the extension of time provided in Code § 65.2–708(C) was triggered when Gordon returned to work, in a light-duty position, in October 2000. Ford reasoned that when Gordon was again awarded temporary total disability benefits in January 2001, the extension ended. Thus, Ford concluded, "thereafter, all claims for further compensation would have to be filed within two years from the date for which compensation was last paid per [Code] § 65.2–708(A) and that [Code § 65.2–708(C) ] could not be used to extend the period during which compensation was said to be paid." Ford maintained that since Gordon was

---

1. April 20, 2005 was twenty-four months from the beginning of the April 20, 2003 to September 11, 2006 period during which Gordon worked for Ford in a light-duty capacity earning wages equal to or higher than his pre-injury average weekly wage.

last paid workers' compensation benefits on February 23, 2003, he had until February 23, 2005 to apply for benefits based on a change in condition.

The deputy commissioner rejected Ford's argument and awarded Gordon the benefits he requested. The deputy commissioner determined that "nothing in the statute indicates that the provisions of Code § 65.2–708(C) do not begin to run anew after later periods of partial disability or temporary total disability for which awards are entered."

Ford appealed the deputy commissioner's decision to the full commission. The commission held that Gordon's change-in-condition application was time-barred. The commission explained its holding as follows:

> We have held that the term "consecutive" in § 65.2–708(C) means "following successively without interruption." *Frisk v. Marshall's*, VWC File No. 183–99–55 (June 6, 2007); *Crites v. Slurry Pavers, Inc.*, VWC File No. 202–99–47 (February 15, 2005) (finding the statute tolled only for one consecutive period). We have additionally held that this section provides *"an* extended limitation period" and the consecutive twenty-four month period begins on the date the claimant is provided light duty work. *Phelps v. Safeway Stores, Inc.*, 77 OCE 138 (1998) (emphasis added), *aff'd,* Record No. 1246–98–4 (Ct.App.1999) (unpub.). Our holdings are consistent with the language of the statute referring to "a period" and not to multiple periods. *See also Greene v. Gwaltney of Smithfield, Inc.*, 13 Va.App. 486, 492, 413 S.E.2d 650, 654 (1992).[2]

Therefore, according to the commission, the Code § 65.2–708(C) tolling provision does not " 'begin to run anew' after later periods of awarded disability." In other words, the provision is applicable only once to a compensable injury regardless of the number of awards of compensation for

---

**2.** As explained *infra,* we do not accord deference to the commission's interpretation of the statute, which is in conflict with the statute's plain language.

subsequent periods of disability that may arise from the injury.

This appeal followed.

## II. ANALYSIS

Under Code § 65.2–708(A), a party may ask the commission to "review any award" of benefits based upon a change in condition. However, "[n]o such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title. . . ." Code § 65.2–708(A). Code § 65.2–708(C), in turn, operates as a tolling provision that extends this limitation. This tolling is effected by an expanded definition of compensation to include light-duty wages that are equal to or greater than the employee's pre-injury wages:

> All wages paid, for a period not exceeding twenty-four consecutive months, to an employee (i) who is physically unable to return to his pre-injury work due to a compensable injury and (ii) who is provided work within his capacity at a wage equal to or greater than his pre-injury wage, shall be considered compensation.

Code § 65.2–708(C).

The parties concede that the wages paid to Gordon following his compensable injury met the statutory test, to the extent that (i) he was unable to return to his pre-injury work due to restrictions from the injury, and (ii) Ford provided him light-duty work at wages equal to or greater than his pre-injury wage. However, the parties disagree as to the meaning of the phrase "for a period not exceeding twenty-four consecutive months" in Code § 65.2–708(C) as applied in this case.[3]

---

3. Because we have determined that the sole issue presented " 'involves a pure question of statutory interpretation, [the] issue does not invoke the [commission's] specialized competence but is a question of law to be decided by [this Court].' " *Commonwealth v. Barker*, 275 Va. 529, 536, 659 S.E.2d 502, 505 (2008) (quoting *Alliance to Save the Mattaponi v.Commonwealth*, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005)).

Under well-settled rules of statutory construction, "we consider the language of a statute to determine the General Assembly's intent from the plain and natural meaning of the words used." *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006) (citations omitted). That is, "words [in a statute] are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." *Phelps v. Commonwealth*, 275 Va. 139, 142, 654 S.E.2d 926, 927 (2008) (citations omitted). And "we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *Rasmussen v. Commonwealth*, 31 Va.App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting *Frazier v. Commonwealth*, 27 Va.App. 131, 135, 497 S.E.2d 879, 881 (1998)). Furthermore, it is our "duty ... 'to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Oraee v. Breeding*, 270 Va. 488, 498, 621 S.E.2d 48, 52 (2005) (quoting *Virginia Elec. & Power Co. v. Board of County Supervisors of Prince William County*, 226 Va. 382, 387–88, 309 S.E.2d 308, 311 (1983)). Thus, we "'will look to the whole body of [a statute] to determine the true intention of each part.'" *Id.* (quoting *McDaniel v. Commonwealth*, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)).

Under the Virginia Workers' Compensation Act, a claimant may be paid compensation pursuant to multiple awards based on multiple periods of disability arising from the same compensable injury, as occurred in this case. Code § 65.2–708(A) contemplates a succession of awards by authorizing the commission to "review *any* award" [4] upon "the ground of a change

---

4. *See United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (citation and internal quotation marks omitted)); *Rubin v. Gochrach*, 186 Va. 786, 797, 44 S.E.2d 1, 5–6 (1947) ("The words 'any renewal' [in the subject lease] are comprehensive, and logically include more than one renewal."); *Cox v. Cox*, 16 Va.App. 146, 148, 428 S.E.2d 515, 516 (1993) ("The plain and unambiguous meaning of the word 'any' is one

in condition," [5] and "on such review ... make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title...." (Emphasis added.) Furthermore, the two-year statute of limitations under subsection A is tolled while the claimant receives compensation. Subsection A also provides, however, that (i) a "change of condition (cause of action) must occur" and (ii) the change of condition application must be filed "within twenty-four months from the date for which the last compensation was paid." *Whitten v. Mead Paperboard Products*, 4 Va.App. 182, 186, 355 S.E.2d 349, 350 (1987).

The date for which compensation was last paid under any award is thus the determining factor as to whether a change-in-condition application is time-barred under Code § 65.2–708(A), subject to subsection C of the statute. Subsection C sets forth a caveat to the operation of the subsection A statute of limitations by providing that wages, when paid under the prescribed circumstances, are "considered compensation." Code § 65.2–708(C). As a result, the payment of such wages tolls the statute of limitations in the same manner as the payment of compensation. This caveat, in turn, is subject to the condition that the wages will cease being treated as compensation at the point when "*a period*" [6] of such payment

---

or more indiscriminately from all those of a kind." (citation and internal quotation marks omitted)).

5.  Pursuant to Code § 65.2–101, a "change in condition" is "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation."

6.  In construing the word "a" in a similar statutory context, the Virginia Supreme Court recently stated that the "ordinary meaning" of this indefinite article is " 'any' or 'each.' " *Phelps*, 275 Va. at 142, 654 S.E.2d at 927 (quoting *Webster's Third New International Dictionary* 1 (1993)). *See In the Matter of Carroll*, 124 Ohio App.3d 51, 705 N.E.2d 402, 404 (1997) (holding that the statutory term, "a period of up to six months," contemplates multiple periods and that the word "any" in the subject statute "means one out of many, i.e., an indefinite number").

of wages "exceed[s] twenty-four consecutive months." Code § 65.2–708(C) (emphasis added).

Accordingly, the Code § 65.2–708(A) statute of limitations runs anew under each successive award of compensation for a compensable injury, and is triggered on the last day for which compensation was paid. Subsection C, in providing for wages to be treated as compensation under subsection A, is likewise subject to application under each such award as subsection C supplements subsection A, A and C operating in conjunction with each other. Subsection C is not a stand-alone provision—it instead provides a definition for the tolling mechanism applied to subsection A, when applicable. The Code § 65.2–708 change-in-condition/statute of limitations scheme thereby functions, in its entirety, on an award-by-award basis—not on what amounts to a hybrid award-by-award/injury-by-injury basis under the commission's construction of the statute.

Here, after entry of the commission's January 13, 2003 open-ended award of compensation to Gordon for partial disability, Ford placed him in a light-duty position earning wages equal to or more than his pre-injury wage. This continued, without interruption, from April 20, 2003 to September 11, 2006. Therefore, during the first twenty-four months of this period, Gordon's wages were to be "considered compensation" for purposes of tolling the Code § 65.2–708 statute of limitations. Code § 65.2–708(C). The statute of limitations was thus tolled through April 20, 2005, meaning Gordon's change-in-condition application, filed in 2006, was not time-barred under the statute.

### III. CONCLUSION

For these reasons, we reverse the commission's decision and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

PETTY, J., concurring.

While I agree with the reasoning and the outcome of the majority opinion, I write separately to express a slightly broader rationale for our decision.

First, in construing the statute, we must give meaning to all the words used. *See Brandt v. Maha Lakshmi Motors, Inc.*, 48 Va.App. 493, 498, 632 S.E.2d 628, 631 (2006) ("When interpreting a statute, we must give every word some meaning where possible. To that end, we must evaluate each word within the entire phrase of which it is a part." (internal citations omitted)). Here, the legislature was specific when it defined the nature of the twenty-four-month period in Code § 65.2–708(C): the twenty-four months must be consecutive. The word "consecutive" means "successive; succeeding one another in regular order; to follow in uninterrupted succession." *Black's Law Dictionary* 304 (6th ed.1990); *see also Am. Heritage Dictionary* 313 (2d ed. 1982) ("Following one after another without interruption."); *Hudson v. Youell*, 179 Va. 442, 465, 19 S.E.2d 705, 715 (1942) (Hudgins, J., dissenting) (quoting *Webster's Int'l Dictionary* to define "consecutive" as " '[f]ollowing a train; succeeding one another in a regular order; having no interval or break; *sequent* ' "). Each month of that twenty-four-month period must "follow in uninterrupted succession." *Black's Law Dictionary, supra* at 304. Hence, under the plain language of the statute, if there is a break in that uninterrupted succession—as happened when Gordon intermittently received disability benefits rather than light-duty wages—the tolling period must begin anew upon a subsequent period of light-duty employment and continues until twenty-four consecutive months have been reached. Or, in other words, the statute does not permit a combination of multiple periods of shorter duration to end the tolling provisions of subsection C. And, if multiple periods of shorter duration do not satisfy the twenty-four consecutive month period, it is illogical to think that a single period of shorter duration would do so. Had the General Assembly intended the statute to apply to any period of shorter duration, it simply would have omitted the word "consecutive" and defined the period as "not to exceed twenty-four months."

Second, I believe that this interpretation is consistent with our stated purpose of the statute. According to our decision in *Scott v. Scott*, 16 Va.App. 815, 819, 433 S.E.2d 259, 262

(1993), Code § 65.2–708(C) exists "to prevent employers from lulling partially disabled workers into a false sense of security . . . by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits." The dissent's interpretation of Code § 65.2–708(C) would cut off the tolling provision at the end of a claimant's first period of light-duty employment—no matter how short the duration of that employment. Thus, after only one day of light-duty employment an employer could temporarily lay off a claimant, who would then receive temporary total disability benefits. After the claimant's return to light-duty employment for two years (the duration of the statute of limitations in subsection A), the employer could terminate the claimant with no further workers' compensation liability. This result runs contrary to the intent behind the statute, and renders subsection C meaningless.

Finally, I must take issue with the dissent's suggestion that this interpretation ignores the phrase "not exceeding." The facts of this case demonstrate how this phrase is consistent with our reading of the statute. Here, Gordon worked in a light-duty capacity from April 20, 2003 through September 11, 2006. However, only a portion of that total period—from April 20, 2003 through April 19, 2005—did not exceed twenty-four months. Thus, after April 20, 2005 Gordon's light-duty wages were no longer deemed compensation and the limitation period of subsection A began.

HALEY, J., dissenting.

I respectfully dissent. I would hold Code § 65.2–708(C) provides only one extension of the statute of limitations contained in Code § 65.2–708(A). Since the time provided by the statute of limitations, even with the extension contained in subsection (C), expired before Gordon filed his claim, I would hold Gordon's claim time-barred.

In relevant part, Code § 65.2–708 states:

A.  Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the award. . . . No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title. . . .

\* \* \* \* \* \* \*

C.  All wages paid, for a period not exceeding twenty-four consecutive months, to an employee (i) who is physically unable to return to his pre-injury work due to a compensable injury and (ii) who is provided work within his capacity at a wage equal to or greater than his pre-injury wage, shall be considered compensation.

When examining the meaning of a statute, we look first to its plain language. *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006). To this end, "we examine the statute in its entirety, rather than by isolating particular words or phrases." *Earley v. Landsidle*, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999). The Court assumes the General Assembly carefully chose the terms used. *Simon v. Forer*, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003). We may not "add language to the statute the General Assembly has not seen fit to include," *Jackson v. Fid. & Deposit Co.*, 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (citation omitted), or give statutory terms of definite meaning "a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed," *Lee County v. Town of St. Charles*, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). When the statutory language is clear, "we are bound by the plain meaning of that language." *Vaughn, Inc. v. Beck*, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001).

The statutory interpretation at issue here concerns a pure question of law, and so we review the commission's decision *de novo*. *Town of Waverly Law Enforcement v. Owens*, 51 Va.App. 277, 280, 657 S.E.2d 161, 163 (2008). We keep in mind that while "the Workers' Compensation Act is to be construed liberally in favor of the employee," *Hospice Choice, Inc. v. O'Quin*, 42 Va.App. 598, 603, 593 S.E.2d 554, 556 (2004), the commission's interpretation of the Act has highly persuasive value, *Peacock v. Browning Ferris, Inc.*, 38 Va.App. 241, 248, 563 S.E.2d 368, 372 (2002).

Code § 65.2–708(C) states that when an employee lacks the physical ability to perform his work because of a compensable injury, his employer provides him with other work suitable to his new capacity, and the wages from that work equal or exceed the pre-injury pay, those wages toll the statute of limitations for filing a change-in-condition application under Code § 65.2–708(A) up to twenty-four months. *See Scott v. Scott*, 16 Va.App. 815, 818, 433 S.E.2d 259, 261 (1993). An employee meeting the statutory conditions receives "an additional twenty-four months before the statute of limitations of Code § [65.2–708(A) ] begins to run." *Greene v. Gwaltney of Smithfield, Inc.*, 13 Va.App. 486, 492, 413 S.E.2d 650, 654 (1992). Code § 65.2–708(C) "operates solely to extend the limitation period of Code § [65.2–708(A) ].... Code § [65.2–708(C) ] has no applicability, except with reference to Code § [65.2–708(A) ]." *Cohen v. Fairfax Hosp. Ass'n*, 12 Va.App. 702, 707, 407 S.E.2d 329, 332 (1991). The General Assembly enacted Code § 65.2–708(C) "to prevent employers from lulling partially disabled workers into a false sense of security ... by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits." *Nguyen v. Fairfax County Bd. of Supervisors*, 26 Va.App. 100, 103, 493 S.E.2d 391, 392 (1997) (citation omitted).

I would hold that the language of Code § 65.2–708(C) provides only one extension of the statute of limitations contained in Code § 65.2–708(A). The Code contains this limitation by authorizing tolling of "*a period not exceeding* twenty-

four *consecutive* months." Code § 65.2–708(C) (emphasis added).

Although the majority holds the General Assembly intended to permit multiple periods of extension, our case law shows the language of "a period" contemplates only one period. Our Supreme Court addressed this issue in *Corns v. School Board of Russell County*, 249 Va. 343, 454 S.E.2d 728 (1995). There the Court considered the meaning of statutory language requiring "[a] probationary term of service for three years" for teachers. *Id.* at 349, 454 S.E.2d at 732. The Court held that while the phrase "service for three years" could "be interpreted as service in each of three intermittent school years . . . [t]he words 'a term' mean one such period." *Id.; see also Van Dresser v. Firlings*, 305 Mass. 51, 24 N.E.2d 969, 970 (1940) ("The word 'period' as applied to time carries with it the idea of the separation of a designated interval of time from the flow of time in general. The words 'a period' do not readily expand to include an irregular succession of times or periods of varying length. . . ."). As applied here, the language in Code § 65.2–708(C) of "a period" likewise means one period. It was not necessary for the General Assembly to use the word "one" to indicate one period.

If the General Assembly had intended to permit multiple periods of tolling under Code § 65.2–708(C), it could have easily done this by writing the statute to authorize "*periods* not exceeding twenty-four consecutive months." It seems more rational to use the plural to mean the plural than to use the singular to mean the plural, as the majority holds. Long ago Justice Hudgins suggested as much when he remarked that "it would be unreasonable to state that 'periods' refer to 'one single term.'" *Hudson v. Youell*, 179 Va. 442, 465, 19 S.E.2d 705, 716 (1942) (Hudgins, J., dissenting); *cf. Rasmussen v. Commonwealth*, 31 Va.App. 233, 237–39, 522 S.E.2d 401, 403–04 (1999) (holding that where a scientific test took multiple samples to produce a single result and the statute gave the defendant the right to observe the "breath test," "sample," and "blood alcohol reading," phrased in the singular, the defendant only had the right to see the final printed result).

When combined with the language of a single period, the statutory grant of an extension *"not exceeding* twenty-four consecutive months" also evidences an intent to limit tolling to a defined period. Code § 65.2–708(C). The term "not exceeding" is defined: "Usually a term of limitation only, denoting uncertainty of amount." *Black's Law Dictionary* 1061 (6th ed.1990). Our Supreme Court has referred similarly to the term, calling it "clear words of limitation." *Southern Ry. Co. v. Commonwealth,* 206 Va. 831, 836, 147 S.E.2d 72, 75 (1966). Another court stated that "not exceeding" means an amount "shall not be more, but may be less." *Stuyvesant Ins. Co. v. Jacksonville Oil Mill,* 10 F.2d 54, 56 (6th Cir.1926). The court remarked that any other interpretation "does violence to the plain and unambiguous language." *Id.* Still another court held that where a contract required a company to operate a business "for a period 'not to exceed sixty days,'" any amount up to sixty days satisfied the contract. *Union Liquors, Inc. v. Finkel & Lasarow, Inc.,* 44 Cal.App.2d 706, 113 P.2d 19, 21 (1941). Thus, the words "not exceeding" in Code § 65.2–708(C) reveal the General Assembly's intention to limit the tolling of the statute of limitations to up to, but no more than twenty-four consecutive months. *See also Rohanna v. Commonwealth,* 168 Va. 696, 701, 190 S.E. 171, 173 (1937) (holding that where a statute authorized a court to require a criminal defendant to give a bond for "a term not exceeding one year," the court lacked power to require bonds beyond the term of the initial year); *Cox v. Hagan,* 125 Va. 656, 680, 100 S.E. 666, 674 (1919) (using "not exceeding" to refer to up to a maximum amount). Twenty-four consecutive months represents the maximum extension.

The majority's conclusion allows numerous periods of tolling, thereby negating the General Assembly's intent that the tolling not exceed twenty-four consecutive months. Suppose, for example, that an employee sustains a compensable injury, then works forty-seven months in a job tolling the statute of limitations for the first twenty-four months. The employee then briefly leaves work and collects benefits due to the injury. Under the majority's holding, such an employee re-

ceives an additional twenty-four months of tolling upon returning since the statute of limitations under Code § 65.2–708(A) never fully expired. I believe this runs plainly contrary to the General Assembly's intent to provide a limited benefit of tolling.[7]

The concurrence's conclusion that the term "consecutive" means the period of extension described in Code § 65.2–708(C) must run until reaching twenty-four months misconstrues the statutory language of "not exceeding." As mentioned above, the term "not exceeding" is defined: "Usually a term of limitation only, denoting uncertainty of amount." *Black's Law Dictionary, supra* at 1061. "The words 'not exceeding,' in themselves, are words not of grant or apportionment, but of limitation only, and standing alone are ordinarily so construed." *City of Kingsville v. Meredith,* 103 F.2d 279, 281–82 (5th Cir.1939); *see also Boston & M.R.R. v. United States,* 265 F. 578, 579 (1st Cir.1920). "The words denote uncertainty of amount. Such language imposes no duty to adopt the maximum amount rather than some lesser amount authorized." *Saxhaug v. County of Jackson,* 215 Minn. 490, 10 N.W.2d 722, 724 (1943) (citation omitted). Hence, the meaning of a term "not exceeding twenty-four consecutive months" is a period up to, but no more than twenty-four consecutive months. Any length of time from a day to two years is a period not exceeding twenty-four consecutive months. As the dictionary states, the time is unspecified. Yet for the concurrence, the statute specifies a twenty-four month period. This changes the language of "a period not exceeding twenty-four consecutive months" to "a period equal to twenty-four consecutive months." I cannot reconcile "not exceeding" with "equal to."

---

7. On a similar note, courts have frequently noted the necessity of eventually ending litigation. "Litigation is a serious and harassing matter, and the right to know when it is ended is a valuable right." *Avery v. County Sch. Bd. of Brunswick County,* 192 Va. 329, 333, 64 S.E.2d 767, 770 (1951). Likewise, while the workers' compensation context presents its own challenges, it eventually demands finality.

Further contrary to the concurrence and generally support-
ing my position, the General Assembly could have good reason
to include the word "consecutive" without intending to guaran-
tee a full twenty-four-month period. Consecutive is defined:
"Successive; succeeding one another in regular order; to
follow in uninterrupted succession." *Black's Law Dictionary*,
*supra* at 304; *see also Hudson*, 179 Va. at 465, 19 S.E.2d at
715 (Hudgins, J., dissenting) (quoting *Webster's International
Dictionary* to define "consecutive" as " '[f]ollowing in a train;
succeeding one another in a regular order; having no interval
or break; *sequent* ' "). This Court has further noted that as
applied to time the inclusion of the word consecutive connotes
a definite period. *Va. Employment Comm'n v. Davenport*, 29
Va.App. 26, 30, 509 S.E.2d 522, 524 (1999). By including the
word "consecutive," the General Assembly could intend that
the single period provided be temporally whole. In other
words, the period could not begin, stop, and then begin again
until the time reached twenty-four months. Such a result
could cause lengthy protraction of a claim, defeating the
purpose of the statute of limitations.[8] The word "consecutive"
remedies these possible ills; it does not reveal a guarantee of
time, especially given the other statutory language.

In summary, the language of Code § 65.2–708(C) provides
only one period of extension from the statute of limitations in
Code § 65.2–708(A). The language authorizing "a period"
rather than "periods" denotes a single period. Taken togeth-
er, the words "not exceeding" and "consecutive" show the
General Assembly desired an extension of the statute of
limitations up to but no greater than twenty-four consecutive
months.

Aside from this textual analysis, the majority ignores an
important principle of statutory construction: "It is well set-
tled that where the construction of a statute has been uniform

---

8. Statutes of limitation have their roots in sound public policy in that
they seek to preserve evidence and prevent presentation of stale claims.
*Burns v. Bd. of Supervisors of Stafford County,* 227 Va. 354, 359, 315
S.E.2d 856, 859 (1984).

for many years in the administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts." *Dan River Mills, Inc. v. Unemployment Comp. Comm'n*, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954); *see also Commonwealth v. Am. Radiator & Standard Sanitary Corp.*, 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960) ("The elementary rule of statutory construction is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction."); *Chauncey F. Hutter, Inc. v. Va. Employment Comm'n*, 50 Va.App. 590, 594, 652 S.E.2d 151, 153 (2007); *cf. Purolator Courier Corp. v. Clemons Courier Corp.*, 236 Va. 394, 400, 374 S.E.2d 42, 45 (1988).

The commission wrote in its decision here:

We have held the term "consecutive" in § 65.2–708(C) means "following successively without interruption." *Frisk v. Marshall's*, VWC File No. 183–99–55 (June 6, 2007); *Crites v. Slurry Pavers, Inc.*, VWC File No. 202–99–47 (February 15, 2005) (finding the statute tolled only for one consecutive period). We have additionally held that this section provides "*an* extended limitation period" and that the consecutive twenty-four month period begins on the date the claimant is provided light duty work. *Phelps v. Safeway Stores, Inc.*, 77 OWC 138 (1998) (emphasis added), *aff'd*, Record No. 1246–98–4 (Ct.App.1999) (unpub.). Our holdings are consistent with the language of the statute referring to "a period" and not to multiple periods. *See also Greene v. Gwaltney of Smithfield, Inc.*, 13 Va.App. 486, 492, 413 S.E.2d 650, 654 (1992).

In her dissent, Commissioner Diamond acknowledged that the commission had "previously analyzed the meaning and intent of Code § 65.2–708(C) in the manner outlined in the Majority Opinion." Thus, it may be said the General Assembly acquiesced in an interpretation of the statute such as given by the commission. Yet the majority gives this interpretation no deference.

It may be true that some workers may receive only a small benefit from the tolling provisions of Code § 65.2–708(C), if the same is construed in accordance with this dissent. Yet this Court may not alter the language of the statute to accommodate individual and sometimes unfortunate circumstances. *Britt Constr., Inc. v. Magazzine Clean, LLC*, 271 Va. 58, 64, 623 S.E.2d 886, 889 (2006). As our Supreme Court has advised, "unless the legislature makes exceptions to cover circumstances not specifically stated in the statute, such exceptions do not exist. . . . The arbitrary and peremptory provisions of the statute are necessary to accomplish the purposes of the enactment." [9] *Crewe v. Marler*, 228 Va. 109, 113–14, 319 S.E.2d 748, 750 (1984). Even if applying a statute's language "leads to a result considerably broader than one might think [the General Assembly] should have intended . . . it is not our place to rewrite statutes to conform with our notions of efficacy or rationality." *Smith v. Richmond Mem'l Hosp.*, 243 Va. 445, 454, 416 S.E.2d 689, 694 (1992) (citation omitted). Likewise, "[t]he calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

Here Gordon returned to work earning at or above his pre-injury wages in October 2000. This started the twenty-four-month tolling provision of Code § 65.2–708(C). For the next twenty-four months, the Code considered any wages Gordon received at or above his pre-injury pay to be compensation. The twenty-four-month period expired in October 2002 and could not be renewed thereafter based on the January 2000 injury. However, since Gordon last received payment pursu-

---

9. Large state programs such as workers' compensation require broad rules to function. Such rules will inevitably not produce ideal results in all situations. Yet as the United States Supreme Court has recognized in the social security context, "[g]eneral rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977).

ant to an award in February 2003, he had until February 2005 to file an application based on a change in condition. Yet Gordon did not file his application until September 2006.[10] This fell outside the time provided by the statute of limitations, and the commission correctly held the application time-barred.

For the foregoing reasons, I would affirm the judgment of the commission.

---

10. As noted in the majority's factual background, Gordon also earned greater than his pre-injury wage from April to June 2002. Even using these dates, the statute of limitations still bars Gordon's claim since he would have needed to file by April 2006.